IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 22, 2016


WILLIAM T. MINTON v. STATE OF TENNESSEE

Appeal from the Circuit Court for Rhea County
No. 17079    Thomas W. Graham, Judge

_____

No. E2015-00986-CCA-R3-PC – Filed May 4, 2016
_____


The petitioner, William T. Minton, appeals the denial of his petition for post-conviction relief.  He argues that he received the ineffective assistance of counsel.  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Elizabeth Greer Adams, Dayton, Tennessee, for the Appellant, William T. Minton.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; J. Michael Taylor, District Attorney General; and James W. Pope, III, Assistant District Attorney General, for the Appellee, State of Tennessee.


**OPINION**

**FACTS AND PROCEDURAL HISTORY**

The petitioner was initially charged with one count of first degree (felony) murder, one count of first degree (premeditated) murder, and one count of aggravated robbery based on his role in the death of the victim, Carlos "Cotton" McCuiston.  *State v. William T. Minton*, No. E2010-01156-CCA-R3-CD, 2011 WL 3860492, at *1 (Tenn. Crim. App. Sept. 1, 2011), *perm. app. denied* (Tenn. Dec. 14, 2011).  At the time of the incident, the victim's nephew, Alan Smith, lived with his fiancée, April Kinder; their child; and the

victim's mother, Mary Couch. *Id.* Mr. Smith's aunt, Dorothy Smith, lived in a trailer near his apartment, and his aunt, Zola Smith, also lived in an apartment near Mr. Smith's. *Id.* Ms. Dorothy Smith and Ms. Zola Smith were the victim's sisters. *Id.* On the evening of the victim's death, Mr. Smith went to Ms. Zola Smith's apartment and saw the victim and the petitioner "sitting in the living room 'drinking, having a great time.'" *Id.* Mr. Smith had known the petitioner all of his life and considered him to be a member of the family. *Id.* Mr. Smith spoke with the victim for about twenty minutes and then returned to his own apartment. *Id.*

Mr. Smith later returned to Ms. Zola Smith's apartment. *Id.* As he reached for the door, the door opened, "and he 'walked into'" the petitioner. *Id.* Mr. Smith asked the petitioner where the victim was, and the petitioner responded that he had killed him. *Id.* Mr. Smith believed the petitioner was just "drunk talking," and he searched the apartment for the victim. *Id.* The petitioner returned to the apartment, and Mr. Smith again asked him where the victim was. The petitioner replied that Mr. Smith "'ought to look in the tub.'" *Id.* Mr. Smith went into the bathroom and found the victim "lying facedown in the bathtub with his arms curled up underneath him." *Id.* Mr. Smith saw the victim's wallet lying open against the tub, and he observed blood "all over the walls and the tub." *Id.* Mr. Smith hit the petitioner in the mouth, and the petitioner fell over a chair. *Id.* While the petitioner was on the ground, Mr. Smith struck him in the face again. *Id.*

Mr. Smith returned to his apartment and was screaming to Ms. Kinder that the victim was dead. *Id.* Mr. Smith called 9-1-1 and then went to Ms. Dorothy Smith's trailer while Ms. Kinder ran to Ms. Zola Smith's apartment. *Id.* at *1, 2. Later, Mr. Smith, Ms. Dorothy Smith, and Ms. Kinder all went to Ms. Zola Smith's apartment, which she shared with William Harris. Mr. Harris saw Mr. Smith, Ms. Dorothy Smith, and Ms. Kinder go to the bathroom, where Mr. Smith attempted to remove blood clots from the victim's mouth in an effort to help him breathe. *Id.* at *2. Officers Jason Woody and Brian Malone were dispatched to the home. *Id.* at *3-4. Officer Woody ordered everyone to leave the apartment and radioed for medical assistance and secured the crime scene. *Id.* at *3. He and Officer Malone went to check on the petitioner, and the petitioner was later taken to a hospital. *Id.* at 3-4. Officer J.C. Byrd retrieved the petitioner's clothes from the hospital, and he found a green Bic lighter, a gold necklace, a gold heart pendant, a gold diamond ring, and a gold watch. *Id.* at *4. Mr. Smith identified the jewelry as belonging to the victim, and Ms. Kinder testified that Ms. Couch had given the victim a green Bic lighter earlier in the evening. *Id.* at *1, *2.

Dr. Darinka Miluesnic-Polchan testified that the victim suffered from blunt force trauma and strangulation injuries. *Id.* at *4. The victim had bruises on the back of his head, and one of the bruises was "not inconsistent" with the pattern of the petitioner's boot. *Id.* The victim died of strangulation, and blunt force trauma was a contributing

2

factor in his death. *Id.* At the time of the victim's death, his blood alcohol content was .32 percent. *Id.* at *5. The parties stipulated that the petitioner's blood alcohol concentration was .26 percent, although the stipulation did not specify when the petitioner's blood was tested. *Id.* at 5 & n.2.

Several witnesses testified for the defense, including Thadeus Savage. *Id.* at *5-6. Mr. Savage testified that he grew up with Mr. Smith and that they were friends. *Id.* at *6. He testified that he called Ms. Couch's residence a week after the victim's death and spoke to Mr. Smith, who admitted that he struck the victim with a lamp and strangled him with a lamp cord. *Id.* Mr. Savage did not report this conversation to the authorities "because he had 'other things going on.'" *Id.* Mr. Smith testified on rebuttal that Mr. Savage did not telephone him a week after the victim's death and that he never told Mr. Savage that he killed the victim. *Id.* at *7.

The petitioner was convicted of two counts of the lesser included offense of second degree murder and one count of aggravated robbery. *Id.* at *7. The trial court merged the two convictions for second degree murder and imposed a sentence of thirty-five years. *Id.* at *1. The court imposed an eighteen-year sentence for the aggravated robbery conviction, and the court ordered the petitioner to serve these sentences consecutively. *Id.* On appeal, this court upheld the petitioner's convictions. *Id.*

The petitioner timely filed a *pro se* petition for post-conviction relief. The post-conviction court appointed counsel and held a hearing on the petition.

At the post-conviction hearing, the petitioner testified that trial counsel met with him less than ten times prior to trial and that the meetings lasted "[a]bout 30 minutes." The petitioner discussed his defense with trial counsel, and he informed trial counsel that Mr. Smith had killed the victim. The petitioner stated that he and trial counsel did not discuss potential trial witnesses, and he said that he did not have any witnesses that he asked trial counsel to interview about the case. He testified that there was never a private investigator hired.

The petitioner testified that he learned after his trial that a man named Lyndell Jones might have had some information about his case. Mr. Jones was in the courtroom when the petitioner arrived for a hearing on his motion for a new trial, and Mr. Jones said that he needed to speak to the petitioner and trial counsel. The petitioner testified that this exchange occurred at the beginning of the hearing and that he ultimately did not get to speak with Mr. Jones. The petitioner explained that he did not know who Mr. Jones was at the time, so he wrote a letter from prison asking trial counsel about his identity. He stated that trial counsel sent him Mr. Jones's affidavit.

3

The affidavit, which was included in the petitioner's petition for post-conviction relief, Mr. Jones alleged that he was present at the scene on the evening of the victim's death. He averred that he saw both Mr. Smith and the petitioner at the victim's residence immediately following the victim's death and that Mr. Smith had on a blood soaked shirt that he later changed. Mr. Jones said that Mr. Smith told him that he removed a tooth from his knuckle. Mr. Jones alleged that he had physically pulled Mr. Smith off of the victim several times in the past. Mr. Jones stated that after the victim's death, Mr. Smith told Mr. Jones that the victim owed Mr. Smith "Hydros." Mr. Jones stated that he had witnessed Mr. Smith attempting to steal the victim's "'stuff'" on several prior occasions. Mr. Jones swore that he talked to police at the scene and informed them that he saw Mr. Smith wearing a shirt covered in blood. Mr. Jones also swore that he informed police that Mr. Smith told Ms. Couch that Mr. Smith had killed the victim.

Mr. Jones did not testify at the post-conviction hearing. At the outset of the hearing, post-conviction counsel informed the trial court that he had subpoenaed Mr. Jones but that Mr. Jones could not attend the hearing in Pikeville because he had no transportation. Post-conviction counsel explained that Mr. Jones could testify in Dayton, in Rhea County, because he could arrange transportation to the courthouse. Post-conviction counsel proposed having the post-conviction court hear Mr. Jones's testimony on the next date that the post-conviction judge held court in Dayton.

On cross-examination, the petitioner testified that even if trial counsel had visited the jail more frequently, he did not know what he could have discussed with trial counsel that would have changed the case. He stated that he did not have any information regarding potential witnesses to provide to trial counsel. He also testified that he did not have any witnesses whom trial counsel failed to call. The petitioner said that trial counsel would have learned about Mr. Jones if he had investigated the case more thoroughly because Mr. Jones was at the crime scene the night the victim died and spoke to police. The petitioner agreed that Mr. Jones was not mentioned in any of the discovery materials. He also agreed that Thadeus Savage testified at trial that Mr. Smith confessed to killing the victim.

Trial counsel testified that he had been a criminal defense attorney for thirty-five years and that he had participated in five to ten jury trials in murder cases. He agreed that he met with the defendant less than ten times before trial, although he explained that he made himself available to the petitioner "as much as possible." Trial counsel testified that he did not believe that further meetings with the petitioner would have benefitted the defense. He stated that he prepared a list of potential witnesses and discussed this list with the petitioner. Trial counsel explained that the petitioner was very helpful, providing him with the names of several witnesses, including Mr. Savage. Trial counsel issued five subpoenas for witnesses and was able to speak with several witnesses. He

4

interviewed Ms. Couch by phone, and he said that Ms. Zola Smith and Ms. Dorothy Smith would not speak with him. Trial counsel learned that Mr. Harris was in the apartment when the victim was killed, and he interviewed Mr. Harris. Trial counsel testified that Mr. Harris had no testimony that would support the defense that Mr. Smith killed the victim.

Trial counsel testified that he did not request fees for a private investigator because he conducted his own investigation. He received "an open book discovery" from the detective in charge of investigating the case, and he "was pretty much provided open book on" the preliminary hearing as well. He had access to Mr. Smith's statement and was able to thoroughly cross-examine Mr. Smith at the preliminary hearing. Trial counsel did not visit the crime scene, but he had the photographs of the scene that the detective provided him. He testified that he did not see any utility in visiting the crime scene, but he said that a visit may have been productive if anyone would have informed him about Mr. Jones.

Trial counsel testified that at the time of trial, he was not aware of Mr. Jones or that he lived in close proximity to the crime scene. He explained that he became aware of Mr. Jones after the hearing on the motion for new trial. He testified that the petitioner never mentioned Mr. Jones's name as a witness and that he did not know anything about Mr. Jones prior to the motion for new trial. Trial counsel testified that he pursued "every lead" that he received from the petitioner "or anyone else."

After the motion for new trial hearing, trial counsel obtained an affidavit from Mr. Jones. Trial counsel agreed that the testimony in the affidavit about Mr. Smith killing the victim would have been hearsay. He testified that he spoke with Ms. Couch and that she would testify that she did not say that Mr. Smith killed the victim. Trial counsel agreed that the testimony would have been cumulative to Mr. Savage's testimony. Trial counsel testified that the evidence may have proved more harmful than beneficial to the case if it was contradicted by Ms. Couch's testimony. Trial counsel testified that he was not sure why the petitioner did not tell him about Mr. Jones. He noted that Mr. Jones's affidavit said that he saw the petitioner at the scene of the crime, and he questioned why the petitioner would not know that Mr. Jones saw him at the residence.

Trial counsel agreed that the order denying the motion for new trial was filed on May 7, 2010. Mr. Jones's affidavit was notarized on May 24, 2010, and trial counsel filed a Motion to Reconsider the Motion for New Trial that included Mr. Jones's affidavit on May 27, 2010. Because he was afraid that the time period for filing a notice of appeal with this court was going to expire, trial counsel filed a notice of appeal on June 1, 2010, and a hearing on his motion to reconsider was not held.

5

After hearing the testimony of the petitioner and trial counsel, the post-conviction court observed that it was unsure how Mr. Jones's testimony would have been admissible at trial. The post-conviction court declined to hear Mr. Jones's testimony at a later date.

Officer Darrell Bell of the Dayton City Police Department testified that he was the lead investigator of the petitioner's case. Officer Bell testified that, prior to trial, he did not know anything about Mr. Jones's saying that he had been to the crime scene, had spoken to police officers, or had any information about the case. Officer Bell spoke with other officers who investigated the case, and none of the officers had any knowledge of Mr. Jones. Officer Bell explained that he spoke with Ms. Crouch, who said that she never made the statement that Mr. Jones alleged she made.

The post-conviction court denied the petition. The court found that the petitioner had not alleged how further meetings with trial counsel would have benefitted his case. The court also found that the petitioner was not aware of any witnesses that trial counsel should have called, other than Mr. Jones. The court noted that both the petitioner and trial counsel were unaware of the information that Mr. Jones had until after the motion for new trial was heard. The court found that trial counsel "made reasonable efforts to bring this new information to light before the trial court and the appellate court." The court also found that the alleged newly discovered evidence of Mr. Jones did not involve the denial of a constitutional right. The court found that the issue was one more properly raised in a motion for new trial or writ of error coram nobis. The court also noted that the evidence appeared unlikely to change the result of the trial if accepted by a jury. The court found that the statement was hearsay and observed that Ms. Couch denied that she made the statement to Mr. Jones or that Mr. Smith made that statement to her. The court also noted that the same evidence was presented to the jury through the testimony of Thadeus Savage. The petitioner filed a timely notice of appeal challenging the post-conviction court's denial of his petition.

## ANALYSIS

The petitioner contends that he received the ineffective assistance of counsel. He argues that counsel was ineffective for meeting with the petitioner less than ten times, failing to request a private investigator, and failing to visit the crime scene. He also argues that the post-conviction court erred by not allowing Mr. Jones to testify at the hearing. The State responds that the petitioner received the effective assistance of counsel.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2010). The

6

petitioner bears the burden of proving the allegations of fact giving rise to the claim by clear and convincing evidence. *Dellinger v. State*, 279 S.W.3d 282, 293 (Tenn. 2009). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). This court generally defers "to a post-conviction court's findings with respect to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013). Claims for post-conviction relief premised on ineffective assistance of counsel present mixed questions of law and fact, which this court reviews de novo with no presumption of correctness. *Id.*

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the right to counsel. This right affords an individual representation that is "within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must prove that: (1) counsel's performance was deficient; and (2) the deficiency prejudiced the petitioner to the degree that the petitioner did not receive a fair trial. *Strickland*, 466 U.S. at 687. A petitioner satisfies the deficiency prong of the test by showing that counsel's representation fell below an objective standard of reasonableness; that is, "the services rendered or the advice given must have been below 'the range of competence demanded of attorneys in criminal cases.'" *Grindstaff*, 297 S.W.3d at 216 (quoting *Baxter*, 523 S.W.2d at 936); *see Strickland*, 466 U.S. at 687. The petitioner must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Courts evaluating the performance of an attorney "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). In order to fairly assess counsel's conduct, every effort must be made "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996).

Prejudice requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the petitioner fails to establish either deficiency or prejudice, post-conviction relief is not appropriate, and this court need not address both components if the petitioner makes an insufficient showing as to one component. *Grindstaff*, 297 S.W.3d at 216 (citing *Goad*, 938 S.W.2d at 370).

The petitioner argues that had trial counsel spent more time with him, trial counsel potentially would have learned about other witnesses to speak with. Trial counsel testified that he spoke with all of the witnesses that the petitioner suggested, and he was also able to speak with Ms. Couch and Mr. Harris. He explained that none of the witnesses ever mentioned Mr. Jones, and he questioned why the petitioner would not have known about Mr. Jones when Mr. Jones's affidavit stated that he saw the petitioner and Mr. Smith at the victim's residence. The petitioner testified that he was not sure how further meetings with trial counsel would have benefitted the case, and he testified that with the exception of Mr. Jones, he was not aware of any other witnesses that he could have suggested to trial counsel. Both the petitioner and trial counsel testified that they were not aware of the information provided by Mr. Jones until after the hearing on the motion for new trial, and Investigator Bell also testified that neither he nor any of the other officers investigating the case had any information regarding Mr. Jones prior to the petitioner's trial. There is nothing to suggest that further visits with the petitioner would have led trial counsel to discover Mr. Jones, and we agree with the post-conviction court that trial counsel's performance was not deficient and that the petitioner did not suffer any prejudice.

The petitioner next alleges that trial counsel was ineffective for failing to hire a private investigator and for failing to visit the crime scene. Trial counsel testified that he did not hire a private investigator because he conducted his own investigation. He had open discovery with Investigator Bell, and he had access to all of the photographs of the crime scene and witness statements. Based on this open discovery and the preliminary hearing, trial counsel did not feel that it was necessary for him to visit the crime scene. He spoke with Ms. Crouch, and he attempted to interview Ms. Zola Smith and Ms. Dorothy Smith, but they would not agree to speak with him. Trial counsel also identified Mr. Harris and spoke with him, and he determined that Mr. Harris did not have any testimony that would benefit the case. The petitioner has not shown that trial counsel's investigation was deficient or that it caused the petitioner prejudice.

The petitioner finally claims that the post-conviction court erred when it did not permit Mr. Jones an opportunity to testify at the post-conviction hearing. Although he cites to no case law to support his claim, it appears that the petitioner argues that the post-

8

conviction court should have granted a continuance or bifurcated the proceedings to allow Mr. Jones to testify. He contends that the testimony could have aided the petitioner in proving that trial counsel was deficient for failing to discover Mr. Jones's testimony. However, as we concluded above, trial counsel was not deficient for failing to identify Mr. Jones. Further, even if Mr. Jones testified and the petitioner established deficiency, he cannot establish that the failure to locate Mr. Jones caused him prejudice. Investigator Bell testified that he had no record of any police officers speaking with Mr. Jones, and trial counsel testified that he later spoke to Ms. Couch and that she would have denied making the statement to Mr. Jones and denied that Mr. Smith made the statement to her. Trial counsel testified that even had he been aware of Mr. Jones's testimony and it had been admissible, he believed that it would have been harmful to the case because Ms. Couch would have refuted it. Finally, the petitioner has made no showing that the post-conviction court abused its discretion when it did not grant a continuance. There is no evidence that the testimony of Mr. Jones would have affected the outcome of the proceedings, and we conclude that the petitioner is not entitled to any relief.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE

9